UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMAL BOWMAN,

        Petitioner,            Case No. 2:18-cv-106

v.                                   Honorable Gordon J. Quist

DUNCAN MACLAREN,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

    I.        Factual Allegations

Petitioner Jamal Bowman is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan. Following a jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b. On July 2, 2013, the court sentenced Petitioner, as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to a prison term of 30 to 90 years.

On the night of July 12, 2011, Petitioner and Amber had a sexual encounter. Based upon that encounter, Petitioner was charged with two counts of first-degree criminal sexual conduct, one count for forced penile/vaginal penetration and one count for forced penile/oral penetration. Petitioner and Amber both testified regarding the encounter. Their respective accounts were irreconcilable.

Petitioner reports that Amber testified as follows:

> Amber remembered walking from the home, and walking around the neighborhood. Amber testified that on her way back home she met "Jinx," [Petitioner]. They walked around and "ended up at some lady's house." The lady—Lauren—gave her dry clothes. As she was sitting on the couch, "Jinx pulls out his penis in front of Lauren." Lauren gave him oral sex, and Jinx "moved onto" Amber, but because she was not comfortable doing it in the living room, they moved to the bedroom. She conceded that she had been flirting with [Petitioner] and that he left to get her more alcohol.
>
> Amber voluntarily went into the bedroom where Amber conceded that "things are consensual at first," and that she had consensual sex with [Petitioner], but she changed her mind because things started "getting rough." Amber testified that Defendant refused to allow her to leave, and when she screamed "at the top of [her] lungs" he hit her in the left eye. Because Amber wasn't performing to [Petitioner's] liking—according to her—he threw her on the bed and pinned her arms and shoulder with his knees. She stated that [Petitioner] picked her up by her neck, choked her and said, "Who's gonna miss you?" At that point, she was scared and decided to go along.

> At some point, [Petitioner] asked her about blood in her underwear, and she responded that it "was from him." Lauren helped her dress, and [Petitioner] told [her] to get the fuck out" and so she left, leaving her shoes behind. She returned to her home crying . . . ."

(Pet'r's Br., ECF No. 2, PageID.12-13) (transcript cites omitted).

Petitioner reports that he testified as follows:

> [Petitioner] met Amber on the street at the apartment complex where she asked where "Jay" was. [Petitioner] responded that Jay was at work, so he took her into the laundry room of an apartment building across the street where they had sex within 20 minutes of having met each other on the street. Amber still wanted to "party" so [Petitioner] called Lauren to use her apartment for additional "partying." He called Lauren to "[make] a reservation for one person" but then called back to make "another reservation for two people, and I did tell her that—you know, what I needed." He had "made a reservation" for Lauren's apartment perhaps two other times for women, because he lived down the street with his girlfriend, and it was "not advisable" for him to take random girls there.

> He rolled a marijuana "blunt" then went to the store for additional Bacardi rum, at Amber's request. When he returned, and all three of them had their drinks, they began their "conversation about sexual activity." Lauren began giving him oral sex, then Amber did. Then he and Amber went into the bedroom. Meanwhile Lauren went to get "freshened up" because "some people just don't be ready to have group sex, you know." While he and Amber were "participating in vaginal sex waiting on Lauren" Lauren came into the bedroom and said that there was blood in Amber's panties. After the "partying" he and Amber went into the bathroom to wash up, and at that time, he did not see any blood in her panties. [Petitioner] then got dressed and went home briefly to let in his god-daughter who had been locked out. He soon returned, but the "threesome thing" was "over with."

> [Petitioner] and Amber began to talk again, and she suggested having sex again, but he said no, but Amber could give him some oral sex. Amber soon grabbed the bottle of liquor again, and [Petitioner] had to take it away from her. At that point, Amber got upset, and [Petitioner] told her "you've got to go," "Man, Amber, you've got to get the fuck out." So, there was only two episodes of penile-vaginal contact—the first in the laundry room, and the second time in Lauren's bedroom. Amber wanted to have sex a third time, but Defendant refused because she was bleeding.

(*Id.*, PageID.17-18) (transcript cites omitted).

Lauren's version of events did not match Amber's or Petitioner's:

> Lauren . . . testified that she received a call from [Petitioner], who she knew through her boyfriend, at about 9:30 p.m. on the 12th. She was in her 2-bedroom apartment.

3

> The second bedroom was set up as a sitting room, with a sofa bed, coffee table, and TV. [Petitioner] asked if he could bring a "female" over to her house. Lauren did not know the "female," whose clothes were wet, and who arrived with [Petitioner], liquor, and snacks. Lauren gave her dry clothes to wear. The "female" was drinking, but Lauren did not see [Petitioner] drink. The female was "flirtatious and hanging all over [Petitioner]" and was visibly intoxicated at that time. Nothing sexual happened between Lauren and [Petitioner] or the "female" while they were in the living room.
>
> After a while, [Petitioner] and the female went into Lauren's bedroom for about 15-20 minutes, as Lauren remained on the balcony, but she assumed they were going to have sex. She did say that at one point [Petitioner] left the bedroom to get more alcohol, and she and Amber went out to the balcony. Lauren said that the female was there for about 2 hours, because she heard the front door close and found her (Lauren's) dry clothes on the bathroom floor. She said that if there had been screaming coming from the bedroom, she would have been able to hear it.

(*Id*., PageID.14-15) (transcript citations and footnote omitted).

The jurors also heard testimony from sexual-assault nurse examiner Teresa Kinney who reported that Amber had bruising on her eyelid, chest and arms, and neck. Kinney also reported that Amber's genitalia showed injury. Nurse Kinney collected a vaginal swab from Amber. The police collected a buccal swab from Petitioner. Petitioner could not be excluded as a donor of the DNA types from the sperm fraction of the vaginal swab. Additionally, testing of the blood on Amber's panties revealed that the YSTR haplotype matched Defendant.

The jury convicted Petitioner of penile/vaginal penetration CSC-I; but, the jury acquitted Petitioner of penile/oral penetration CSC-I. Petitioner, with the assistance of counsel appealed his conviction and sentence. Counsel raised several issues in the main brief, including a claim that the district court erred when it bound Petitioner over to circuit court on the two CSC-I charges. Petitioner also filed a pro per Standard 4 brief[1] raising several additional issues. By unpublished opinion issued January 22, 2015, the Michigan Court of Appeals rejected Petitioner's

---

[1] Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services. Standard 4 requires counsel to inform a defendant of his right to present claims in a brief filed *in propria persona* that counsel will not present. Mich. Admin. Order No. 2004-6.

4

challenges and affirmed the conviction and sentence. (Mich. Ct. App. Op., ECF No. 2-2, PageID.86-96.) Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court. The supreme court denied leave by order entered September 9, 2015. (Mich. Order, ECF No. 2-2, PageID.97.)

Petitioner then returned to the trial court. He filed a motion for relief from judgment raising several issues, some he had raised before as well as new issues. By opinion and order dated April 12, 2016, the Kent County Circuit Court denied Petitioner's motion for relief from judgment. (Kent Cty. Cir. Ct. Op. and Order, ECF No. 2-2, PageID.98-101.) With respect to the issues Petitioner had raised before, the trial court denied relief because the appellate courts had already rejected the claims. (*Id*., PageID.99.) With respect to the new issues, the trial court denied relief because Petitioner could have raised the issues on direct appeal, but had not, and Petitioner had failed to show cause for his failure to raise them on direct appeal or resulting prejudice. (*Id*., PageID.101.)

Petitioner sought leave to appeal the trial court's denial of his motion in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave by orders entered April 29, 2016, and May 2, 2017, respectively. While his application for leave to appeal was pending in the Michigan Supreme Court, Petitioner sought additional relief from that court. He asked the supreme court to add issues to his application and then to remand the matter to the trial court so that he could raise the new issues there. The supreme court granted relief, but only in part: only "to the extent that [Petitioner] asks to amend the application for leave to appeal and add new claims." *People v. Bowman*, 893 N.W.2d 626 (Mich. 2017).

Petitioner returned to the trial court with new issues, which included the following:

II. Whether [Petitioner's] Fourteenth Amendment right to due process was violated where [the] prosecutor instructed [the] jury to only deliberate on a fact not

5

> in issue, "consent," where there was no jury instruction to cure [the] prosecutor['s] error. . . .
>
> IV.  Whether [Petitioner's] impeachment with his post-*Miranda* silence by the prosecutor violated his Fourteenth Amendment due process right to a fair trial.

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 2-2, PageID.103.) Petitioner presented the issues to the court in the form of a motion to amend his initial motion for relief from judgment—as if the Michigan Supreme Court had granted Petitioner's motion to remand in its entirety—rather than as a new motion for relief from judgment. The trial court denied Petitioner's attempt to amend his initial filing:

> Pursuant to MCR 6.502(F), "the court may permit the defendant to amend or supplement the motion at any time." The Defendant provides no reason for failing to amend his Motion for Relief from Judgment prior to his appeal to the higher courts. The fact that Defendant's Motion for Relief from Judgment has previously been denied by this Court, a decision which was affirmed by both the Court of Appeals and Supreme Court, seems to indicate that an amendment at this stage is superfluous. Permitting criminal defendants to amend their motions after a denial would theoretically permit defendants limitless chances to request relief from judgment. This concept is in direct contradiction to the rule as written, which states that "one and only one motion for relief from judgment may be filed with regard to a conviction." MCR 6.502(G)(1).

(Kent Cty. Cir. Ct. Op. and Order, ECF No. 2-2, PageID.103.)[2]

Petitioner again applied for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and the Michigan Supreme Court. Those courts again denied his applications. (Mich. Ct. App. Order, ECF No. 2-2, PageID.105; Mich. Order, ECF No. 2-2, PageID.106.)

On July 3, 2018, Petitioner timely filed his habeas corpus petition. The petition raises four grounds for relief, described in Petitioner's brief as follows:

---

[2] The court also considered, in the alternative, whether Petitioner's issues would be worthy of relief under 6.508(D). The court concluded that Petitioner had failed to demonstrate cause for failing to raise the issues or prejudice and, therefore, even if the court permitted the amendment, Petitioner's claims would be denied.

6

    I.    Petitioner raised a credible claim of actual innocence demonstrating a miscarriage of justice.

    II.    The district court abused its discretion in binding Petitioner over to circuit court where the complainant had to be cajoled and hectored into saying sex was forced.

    III.    Petitioner's Fourteenth Amendment due process right was violated where [the] prosecutor instructed [the] jury to only deliberate on a fact that was not in issue, "consent."

    IV.    Petitioner's Fourteenth Amendment due process right was violated where [the] prosecutor impeached [Petitioner's] exculpatory story told for the first time [at trial] with [Petitioner's] post-*Miranda* silence.

(Pet., ECF No. 1, PageID.5.) Petitioner's Issue I is new[3]; however, Issue II was raised on Petitioner's direct appeal and Issues III and IV were raised in Petitioner's motion to amend his motion for relief from judgment.

    II.    <u>AEDPA Standard</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

---

[3] Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Id*. at 844, 848. To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Id*. at 845. Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner has not demonstrated that he exhausted his first habeas issue in the state courts. Although the habeas statute bars granting relief on unexhausted claims, it does not bar denying relief on such claims.

7

that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Erroneous Bindover (Habeas Issue II)

Petitioner argues that flaws in the preliminary examination proceedings render his conviction invalid. Even if Petitioner were correct in stating that his preliminary examination proceedings were flawed, it would not entitle him to habeas relief. Challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."); *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *Lewis v. Procunier*, 746 F.2d 1073, 1075 (5th Cir. 1984) (allegation of defective indictment insufficient to state a claim for habeas relief); *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970) (alleged defect in state complaint not cognizable in habeas corpus); *Hogan v. Ward*, 998 F. Supp. 290, 294-95 (W.D.N.Y. 1998) (petitioner not entitled to relief on ground that state felony complaint was defective). Taken at face value, petitioner's allegations establish, at best, that his bindover to circuit court was not based upon a proper showing of

probable cause. It is well-settled, however, that a convicted defendant cannot upset a conviction on the argument that no probable cause was shown prior to conviction. *See United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986). Consequently, even if Petitioner were able to show that the bindover was not supported by a sufficient factual showing, this in no way impugns his conviction, which was based upon a jury verdict, not on the preliminary examination proceedings. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("Jury's verdict rendered harmless any conceivable error in charging decision . . . .").

### IV. Due Process Violations (Habeas Issues III and IV)

The trial court refused to consider Petitioner's due process claims regarding "consent" and "pre-*Miranda* silence" because: first, Petitioner raised them in a second motion for relief from judgment and Petitioner was permitted only one such motion; and second, because Petitioner had failed to raise them in his first motion and had also failed to demonstrate cause for that failure or resulting prejudice. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Here, the decisions of the Michigan Supreme Court and Michigan Court of Appeals with respect to Petitioner's Motion to Amend are form orders. "[M]any formulary orders are not meant to convey *anything* as to the reason for the decision." *Id*. The orders of the Michigan Supreme Court and Michigan Court of Appeals are "unexplained order[s] that leave[] the judgment or its consequences in place." *Id*. The last reasoned opinion is that of the trial court and the trial court explicitly imposed a procedural default.[4]

So, Petitioner failed to comply with state procedural rules and the state court relied on Petitioner's failure in rejecting Petitioner's claims. That leaves one question: were the rules independent and adequate state grounds?

---

[4] Here, the trial court relied on alternative procedural defaults: under 6.502(G)(1) ("one and only one motion for relief from judgment may be filed with regard to a conviction"); and under 6.508(D)(3) ("grounds for relief . . . could have been raised on appeal . . . or in a prior motion . . . [and defendant has failed to establish] good cause for failure to raise such grounds . . . and . . . actual prejudice . . . .").

11

Under Michigan Court Rule 6.508(D)(3), a defendant may not collaterally attack a conviction based upon claims that could have been raised on direct appeal, but were not. For such a claim, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." Mich. Ct. R. 6.508(D)(3)(a)-(b). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000). Because Mich. Ct. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, Mich. Ct. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

Similarly, Michigan Court Rule 6.502(G) was adopted in 1995. *See* Staff Comment to 1995 Amendment, Mich. Ct. R. 6.502. Therefore, the "one motion" rule was also "firmly established" at the time Petitioner filed his first motion for relief from judgment. Accordingly, under either rule, Petitioner's Habeas Issues III and IV are procedurally defaulted.

Because Petitioner's claims are procedurally defaulted, habeas review of the claims is barred. That bar, however, is not absolute. This Court may still consider the claim if Petitioner shows "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750, (1991); *Murray*, 477 U.S. at 485; *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Rust*, 17 F.3d at 160–61. To show cause sufficient to excuse a failure to raise claims, Petitioner must point to "some objective factor

12

external to the defense" that prevented him from raising the issue in his first motion for relief from judgment. *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991). Factors that may establish cause include interference by officials, attorney error rising to the level of ineffective assistance of counsel, and a showing that the factual or legal basis for a claim was not reasonably available. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010) (citing *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (citing *McClesky*, 499 U.S. at 493-94 (quotations omitted)).

Petitioner has not attempted to explain his failure to raise, in his first motion for relief from judgment, the issues that he attempted to raise in his second motion. He cannot attribute the failure to counsel, because he was proceeding pro per when he filed his first motion. His failure to raise the issues then remains unexplained. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

Petitioner's only remaining means to overcome the procedural default bar is the miscarriage-of-justice exception. Petitioner must demonstrate, using new evidence, that he is actually innocent.

V. Actual Innocence (Habeas Issue I)

Petitioner seems to offer actual innocence as a stand-alone claim justifying habeas relief. Such a challenge fails to state a cognizable federal claim. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." But the *Herrera* Court did not close the door completely, stating in dicta: "in a capital case a truly

persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. Thus, even without the occurrence of any independent constitutional violation during the state criminal proceeding, federal habeas relief might be warranted for "truly persuasive demonstration of actual innocence," provided: (1) the habeas petition seeks relief in a capital case, in which case such a demonstration of actual innocence "would render the execution of a defendant unconstitutional"; and (2) there is "no state avenue open to process such a claim." *Id.* The Supreme Court emphasized that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.*; *see also House*, 547 U.S. at 555 ("In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'"); *Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007).

Two years after *Herrera,* the Supreme Court held that a claim of actual innocence can be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup*, 513 U.S. at 326-27. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to enable a court to reach the merits of an otherwise procedurally barred habeas petition. *Schlup*, 513 U.S. at 317. The actual innocence claim in *Schlup* is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (citing *Herrera*, 506 U.S. at 404). Thus, the Supreme Court distinguished between a procedural

innocence claim, which can permit a petitioner to overcome procedural obstacles that would otherwise preclude review of underlying constitutional claims, and a substantive or "free-standing" claim of innocence discussed in *Herrera*.

This Court may grant habeas corpus relief only when the state court has violated or unreasonably applied a clearly established holding of the Supreme Court. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412. In the absence of clearly established Supreme Court precedent establishing a free-standing claim of actual innocence, Petitioner's claim is without merit. The Sixth Circuit repeatedly has held that free-standing claims of actual innocence are not cognizable on habeas corpus review. *See Cress*, 484 F.3d at 854 (citing cases). Even if Petitioner could invoke this exception and obtain habeas relief on his freestanding innocence claim, he would have to meet both of the requirements set forth above and then overcome the "extraordinarily high" threshold. Petitioner fails the first requirement. This is not a capital case, and thus, the concern about the unconstitutionality of executing a defendant who has shown persuasive evidence of actual innocence is not implicated. *See Herrera*, 506 U.S. at 417 ("We first point out the obvious - that this is not, in fact, a capital case."). Petitioner, therefore, cannot obtain habeas corpus relief on any freestanding claim of actual innocence.

Petitioner also is unable to show actual innocence as a means of overcoming his procedural default. As discussed in detail above, Petitioner's Habeas Issues III and IV were procedurally defaulted in the state courts. Petitioner can overcome that procedural default if a lack of federal habeas review of the claim would result in a fundamental miscarriage of justice. *See House*, 547 U.S. at 536*; Murray*, 477 U.S. at 495; *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536-37.

In determining whether an applicant has met the requirements for establishing a cognizable claim of actual innocence in order to obtain review of a procedurally defaulted claim, the court must apply the actual-innocence standard developed in *Schlup*. *See Souter v. Jones*, 395 F.3d 577, 596 (6th Cir. 2005). Under *Schlup*, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327 ("[T]he standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); *see also Souter*, 395 F.3d at 602; *Cleveland v. Bradshaw*, No. 11-3162, slip op. at 10-11 (6th Cir. Sept. 10, 2012). "[T]o be credible a gateway claim requires new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *House*, 547 U.S. at 537 (internal quotation marks omitted). The Court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* (internal quotation marks omitted). "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327) (internal quotation omitted).

Petitioner's actual innocence claim fails because he does not offer any new evidence. He simply asks the Court to conclude that he is actually innocent based on the very same evidence that convinced the jury Petitioner was guilty. It necessarily follows that Petitioner has failed to establish that no reasonable juror would have convicted him on that evidence, because

12 reasonable jurors did. Accordingly, Petitioner has not overcome the procedural default bar and he is not entitled to habeas relief.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

17

warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: November 16, 2018                               /s/ Gordon J. Quist
                                                                                              GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE